NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | : | |
|---|---|---|
| REGINALD H. WARE, | : | |
| | : | Civil Action No. |
| Petitioner, | : | 12-7086 (WHW) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| | : | |
| Respondent. | : | |
| | : | |

**WALLS, District Judge:**

Petitioner Reginald H. Ware ("Petitioner") filed a motion ("Petition") seeking to vacate or reduce his sentence. See ECF No. 1. Respondent replied by an answer styled as a Rule 12(b)(6) motion.[1] See ECF No. 8. For the reasons explained later, the Petition will be denied, and no certificate of appealability will issue.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On March 29, 2011, Petitioner, known as "Ronell Ware" or "Kyiis Justice," was arrested and charged with numerous offenses. See USA v. Ware ("Ware"), Crim. Action No. 11-0224 (WHW), ECF Nos. 1 and 2. The arrest was based on a criminal complaint filed five days prior.

---

[1] Respondent's resort to Rule 12(b)(6) was unwarranted in this case. The Court, in no ambiguous terms, directed Respondent to *answer* the Petition. See ECF No. 5, at 1. That directive was selected because Petitioner challenged to the underlying record as insufficiently representative of the relevant material facts. See Browder v. Director, Dep't of Corrections, 434 U.S. 257, 269 and n.14 (1978) ("[While] habeas corpus is a civil proceeding[,] . . . the Federal Rules of Civil Procedure apply in habeas proceedings only to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions. . . . The custodian's response to a habeas corpus petition is not like a motion to dismiss. The procedure for responding to the application for a writ of habeas corpus . . . is set forth in the habeas corpus statutes and . . . takes precedence over the Federal Rules") (citations and quotation marks omitted, footnote incorporated); compare McKenna v. United States, No. 06-3190, 2007 U.S. Dist. LEXIS 32993, at *23-24 (D.N.J. May 3, 2007) (a Rule 12(b)(6) motion on pleadings might, occasionally, be reconciled with Rule 4(b) of the Rules Governing Section 2255 Proceedings and, hence, filed in lieu of an answer if the underlying record is not in dispute in the sense that the inmate neither maintains that the record is incomplete nor challenges it as insufficiently representative of material facts).

The complaint charged Petitioner, a convicted violent felon, and his co-conspirator, Rahoo Drew ("Drew"), with a chain of armed robberies and a carjacking: see id., ECF No. 1; see also USA v. Drew ("Drew"), Crim. Action No. 11-0304 (WHW), ECF No. 1.

> The[se] two men walked into the pharmacy and, while pointing firearms at victims, ordered them to lie on the floor facing down. The victims were threatened with death if they did not comply. After securing the victims inside the pharmacy, the[se] two men seized controlled substances. They also seized cash from the pharmacy and [cash and jewelry] from . . . customer[s]. . . . [T]he robbery [was] captured on the pharmacy's video surveillance system. . . . [The first such offense took place on July 27, 2010. The second took place on August 4, 2010.] On . . . October 12, 2010, [they] carjacked a . . . taxi . . . . The . . . driver picked up the[se] two men in Manhattan . . . . After [they reached] Jersey City, . . . [they] pulled out their firearms and demanded that the taxi driver give them everything in his pockets. [After he complied, he] was ordered out of the car . . . . The[se] two men left in the car. . . . [T]wo days later, [they] used [that car] as the getaway vehicle in a third [armed robbery of a] pharmacy [where they did] seize certain controlled substances [and] cash . . . [T]he robbery [was] captured on the pharmacy's video surveillance system. . . . Additional surveillance videos from outside of the pharmacy, as well as [a] witness, revealed that [they] escaped in the [carjacked vehicle]. Just two days later, [i.e.,] on October 16, 2010, [they committed another armed robbery of] a pharmacy . . . in Jersey City . . . [They took] certain controlled substances [and] cash . . . . [T]he robbery [was captured on the pharmacy's video surveillance system. Additional surveillance videos from outside of the pharmacy, as well as [a] witness, revealed that [they again] escaped in the [carjacked vehicle].

Drew, Crim. Action No. 11-0304, ECF No. 1, at 3-4.

Rubin Sinins, Esq. ("Sinins") was appointed as Petitioner's defense counsel on the day of his arrest. See Ware, Crim. Action No. 11-0224, ECF No. 5. Twelve days later, the grant jury returned a seven-count indictment against Petitioner. See id., ECF No. 7. Two counts were "carjacking" and "possession, use and carrying of a firearm," while the remaining five consisted of four Hobbs Act robberies (one per each pharmacy robbed) and a Hobbs Act conspiratorial agreement between Petitioner, Drew and other persons entered into with an aim to commit the aforesaid offenses and to profit from the ill-gotten proceeds. See id.

2

In May 2011, Petitioner was offered a plea deal under which he had to plead guilty only to three charges: (a) one count of conspiracy; (b) one count of carjacking; and (c) one count of possession, use and carrying of a firearm. See this case, ECF No. 8-2. The deal included dismissal of all Hobbs Act robbery charges and a broadly termed waiver of Petitioner's rights to challenge his convictions and sentences either on direct appeal or by a collateral attack. See id. at 2-4 and 10. Petitioner accepted the plea offer. See id. at 7.

Correspondingly, on July 6, this Court held Petitioner's plea hearing. See Ware, Crim. Action No. 11-0224, ECF No. 13. The Court informed Petitioner about his right to proceed to trial, extensively discussed his waiver of direct-appellate and collateral-attack rights and thoroughly questioned him about his guilt with regard to all charges he was pleading guilty to, as well as about voluntariness of his plea. In response, Petitioner verified, extensively and in no ambiguous terms, that he committed the offenses he was pleading guilty to, averred that his plea was voluntary, knowing and intelligent, and confirmed he was clear as to the scope and operation of his waiver. Yet, on August 3, 2011, Petitioner sent this Court a letter (which he, for a reason not entirely clear to this Court, post-dated by six days) asserting that Sinins and the prosecutor coerced him into taking the plea, and that he should have been entitled to a lower sentence because his crimes did not include a murder. See this case, ECF No. 8-3 ("When [the Court] asked me . . . did I have anything I . . . wanted to say and tell [the Court,] I replied . . . then was not the time. . . . So even though [the Court was] telling me to be a man and speak my mind, . . . I stood down. . . . I informed Mr. Sinins . . . that I was not guilty and intended to go to [a bench] trial . . . not by jury. . . . When [the Court] asked me did I think the sentence agreed to in the plea agreement was fair and reasonable, I didn't think so, and was going . . . to say no [since] I haven't killed anyone").

That being said, the letter verified, again and in no ambiguous terms, that Petitioner indeed partook in the offenses he pled guilty to by bringing these crimes to their intended fruition and by benefitting from the ill-gotten gains. See id. ("I facilitated [these crimes] . . . . I know I am culpable for the part I played in these crimes, and whether that part was minor or not is meritless. . . . My association with Rahoo Drew and others, and my decision to conspire with and assist him and them in the illegal transactions I participated in as a result and culmination of the committal of these crimes was and is one of the wors[t] choices and decision I have ever made in my life. I take full responsibility for my actions in relation to the crimes I am accused of. *Did I partake in them, and conspire with the other culprits*? *Yes I did*. Why? For money") (emphasis supplied).

This letter prompted Sinins to seek termination of his representation of Petitioner. See Ware, Crim. Action No. 11-0224, ECF No. 16. It also prompted this Court to hold another hearing, this time with regard to Petitioner's request to withdraw his guilty plea. See id., ECF No. 17. After that hearing, the Court denied Petitioner's request in light of his statements made during the plea hearing, the withdrawal hearing and in the letter. Correspondingly, the Court sentenced Petitioner to a cumulative 180-month prison term consisting of: (a) two concurrent 96-month sentences, one based on the conspiracy charge and another based on carjacking (under 18 U.S.C. §§ 1951 and 2119, respectively); and (b) a mandatory 84-month sentence, imposed under 18 U.S.C. § 924 in connection with his possession, use and carrying of a firearm. That sentence was ordered to run consecutively to his two concurrent 96-month terms. See id., ECF No. 19.[2]

---

[2] The judgment of conviction contained a typo, stating that the Hobbs Act conspiracy conviction was entered under Section 951, not 18 U.S.C. § 1951. See Ware, ECF No. 20, at 1. But the accompanying language ("Conspiracy to Commit Hobbs Act Robbery") made it abundantly clear that the conviction was under Section 1951.

On February 13, 2013, Petitioner filed a direct appeal, see <u>Ware</u>, Crim. Action No. 11-0224, ECF No. 25, which the Court of Appeals dismissed as untimely. <u>See id.</u>, ECF No. 27. Three months before that appellate filing, he filed the Petition at bar. <u>See</u> this case, ECF No. 1.

Since the Petition is a rambling document, and paraphrasing might take away from the range of Petitioner's claims, it is warranted to quote the pertinent parts verbatim:

> . . . Sinins['] representation of me was constitutionally invalid. He fail[e]d to do any pretrial investigation of my case. He only came to see me twice . . . and gave me ill advice to plead guilty. He lied to me [when he] told me that if I plead guilty to carjacking[,] I would get less time, even though I informed him that I was in fact not guilty of carjacking, and the prosecution never asked me to plea[d] to that. He [must have] put it in the plea agreements himself. . . . And when I went for sentencing[,] I in fact got sentenced to more time. When in fact had he not lied to me and informed me [that I would get more time,] I would've never plead guilty. I also informed Mr. Sinins that I was in fact not guilty of all of the alleged charges against me, and wanted to go to trial. He told me that my alleged co-defendant was going to come to court and testify otherwise, and that if I did not take the plea and elected to go to trial, I would lose and get 107 years . . . . I am legally, factually and actually innocent of the accused crimes, and I was not fully informed of the nature of the charges against me . . . . Mr. Sinins deceived me into involuntarily waiving my appellate rights and coll[a]teral rights. I told him that I didn't think that was a good idea. . . . He said that by waiving these rights, I wouldn't [a]ffect the outcome of the case. [I also had a] constitutionally invalid representation by [my second,] sentencing counsel. Sentencing counsel[']s representation was constitutionally invalid because he did not move to withdraw the guilty plea and did not file an appeal on my behalf. I never waived my right for him to file an appeal. And he knew that [my] guilty [plea] was not binding on him because he was not one of the parties that signed the guilty plea [agreement] . . . . [My] sentence is constitutionally invalid because they gave me points and time for the gun, thereby constituting double counting pursuant to [the] United States Sentencing Guidelines.

<u>Id.</u> at 4-8. Respondent put a formidable effort into distilling the gravamen and peripheral aspects of Petitioner's allegations and answered to the bulk of Petitioner's claims. <u>See generally</u>, this case, ECF No. 8.[3]

---

[3] Perhaps the patchiness of the Petition caused Respondent to overlook some Petitioner's claims and even assert that Petitioner pled guilty to one count of conspiracy, one count of carjacking and one count of Hobbs Act robbery, but not to a firearm-related crime of any kind. <u>See</u> ECF No. 8, at 2. Respondent's assertion is contradicted by the underlying record. All four Hobbs Act robbery charges against Petitioner were dismissed under his plea deal, while

5

Legally, Respondent's answer relied on the framework set forth in Hill v. Lockhart, 474 U.S. 52 (1985), Strickland v. Washington, 466 U.S. 668 (1984), and Cedeno v. United States, 455 F. App'x 241 (3d Cir. 2011), as well as their progeny. See id. at 3-8. Substantively, the answer raised four points. See id.

First, it reflected on the meeting that took place between Petitioner, Sinins and the prosecutor shortly after Petitioner's arrest. During that meeting, the prosecutor extensively detailed to Petitioner the nature of charges against him and the penalties Petitioner was facing. The prosecutor also disclosed to Petitioner that the Government was expecting to establish that he was the principal actor in all offenses charged and planned to prove the same by presenting the testimonies of Drew (who, by that time, had already entered his guilty plea), Drew's co-conspirator and eye witnesses to the robberies, as well as video footages of the robberies, relevant text messages, records of large cash deposits to Petitioner's bank account made right after those robberies (even though Petitioner was unemployed), etc. The answer posed that, since Petitioner was offered and accepted the plea deal after having ample time to reflect on all that information, his guilty plea had to be knowing and intelligent. Respondent also noted that Petitioner's election to follows Sinins' advice to accept the plea offer and avoid the risk of a much harsher sentence did not prejudice him under the Hill-Strickland-Cedeno tests.

Second, the answer reflected on a number of "technical" claims, such as Petitioner's allegations that Sinins erred by waiving Petitioner's indictment or allegedly omitted to show him his Presentence Report before the entry of plea, or assisted him with his plea form after Petitioner already signed it blank. With regard to those allegations, Respondent stressed that Petitioner's failure to allege how he was prejudiced rendered his position unavailing because: (a)

---

the plea offer was conditioned, inter alia, on Petitioner's pleading guilty to one count of § 924(c), that is, possession, use and carrying of a firearm, see ECF No. 8-2, at 2, and Petitioner accepted that offer and pled accordingly.

6

neither the plea form nor Presentence Report contained any errors (and Petitioner never pointed out any error); and (b) even having his indictment waived, Petitioner surely knew the exact charges against him since, at the very least, his meeting with Sinins and the prosecutor.

Third, the answer notes that Petitioner erred in his claim that he was sentenced to a cumulative term longer than the one anticipated in the plea deal: the Government sought, and this Court imposed, the cumulative term corresponding to the range anticipated in the plea deal (a cumulative term of 14 to 16 years), and Petitioner was sentenced to 15.

Finally, the answer included a paragraph detailing the strategy the Government contemplated employing had Petitioner rejected the plea deal:

> Had the case proceeded to trial, the [G]overnment would have filed a superseding indictment . . . . [T]he [G]overnment [w]ould have [raised not just one but] five counts of a violation of 18 U.S.C. § 924(c)(1)(A) . . . . The first count would have carried a mandatory minimum sentence of 7 years, pursuant to Section 924(c)(1)(A)(ii) . . . . Each of the [additional] counts would have carried a mandatory minimum sentence of 25 years, pursuant to Section 924(c)(1)(C) . . . . Because Congress explicitly requires courts to impose each term of imprisonment under Section 924(c) consecutively, this [C]ourt would have been compelled to impose a minimum term of imprisonment of 107 years.

This case, ECF No. 8, at 5.

Respondent's reference to these hypothetical additional Section 924(c) charges, as well as Respondent's statement that Petitioner failed to establish how he was prejudiced by Sinins' actions, substantially confused Petitioner. From Respondent's hypothetical, he deduced that he must have been convicted and sentenced thrice, or at least twice, under § 924(c); from Respondent's statements pointing out the lack of prejudice, he deduced that his Petition might have been deficient simply because it did not include a bold statement that he was "prejudiced." Upon so inferring, Petitioner filed two letters in lieu of his traverse. The first letter read:

> I would like the [C]ourt to take note that[,] on January 13th, 2014[,] the United States Court of Appeals [for] the [Seventh C]ircuit ruled that the federal law of 18

> U.S.C. § 924(c)(1)(A)(ii) was against the law and unconstitutional. [See] United States v. Cureton . . . . It says that defendant cannot be convicted for more than one gun charge for a simultaneous offense. There can only be one gun conviction for simultaneous offense. I was sentenced under the law and received a consecutive sentence of [84 months] for brandishing a firearm when in fact I should not have been [so sentenced].

This case, ECF No. 9, at 1-2.

The second letter stated:

> [Respondent] is claiming that I didn't claim I was prejudiced by [Sinins' actions and, hence,] the violation[] alleged in my [P]etition is erroneous. . . . I am no attorney, and I didn't think I had to say verbatim that the claims in my [P]etition were an act of prejudice against me. However, if it needs [to] be said, then I am saying that now[:] "The actions of [Sinins] . . . were . . . acts that le[]d to prejudice against me. And I would like to have this added [to my Petition]. Furthermore[,] . . . I was illegally sentenced to an additional [84 months] for brandishing a weapon. I should not have been sentenced to [this 84 months] extra at all, as the law that allows for this is illegal, and the [96 months] I received is all that I should have been sentenced to. To sentence me for the crime with a gun and then again separately for the gun and the brandishing of it constitutes a double sentence for the same crime. Only one gun conviction for simultaneous offense [under] United States v. Cureton . . . . [That is why] I seek relief [for] the violation of my constitutional rights . . . .

This case, ECF No. 10, at 1-2.

## II.   DISCUSSION

### A.   Aspects Addressed in the Answer

#### 1.   Governing Legal Regime

Respondent is correct in its reliance on Strickland, Hill, Cedeno and their progeny.

To correct a defendant's sentence under Section 2255, the court must find "that . . . judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack." Garcia v. United States, No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr.

9, 2008) (internal quotation and citation omitted).  Since the defendant's § 2255 petition is a collateral attack, he "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief.  See United States v. Bohn, No. 92-6102, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  Also, where the defendant was convicted as a result of his guilty plea, his § 2255 motion must be limited to an attack on his plea and/or the assistance of his counsel provided in connection with that plea.  See Broce, 488 U.S. at 569; Mabry v. Johnson, 467 U.S. 504, 508-09 (1984); Tollett v. Henderson, 411 U.S. 258, 267 (1973) (when a defendant has unconditionally pled guilty, "he may . . . only attack the voluntary and intelligent character of the guilty plea"); see also Hill, 474 U.S. at 58.  Analogously, where a defendant executes a waiver, that waiver is binding unless the defendant states an ineffective-assistance-of-counsel claim that relates, specifically, to counsel's performance in connection with that waiver.  Accord United States v. Hahn, 359 F.3d 1315, 1326 n.12 (10th Cir. 2004); see also United States v. Corso, 549 F.3d 921, 931 (3d Cir. 2008).

In addition, challenges to the assistance rendered by defense counsel might warrant habeas relief only if the defendant satisfies the two-prong test of Strickland, 466 U.S. at 687-88.  Under the first prong, he must demonstrate that his counsel's performance fell below an objective standard of reasonableness, see id. at 688; under the second prong, he must establish – rather than merely allege -- prejudice caused by his counsel's deficient performance.  See id. at 692-93; see also Knowles v. Mirzayance, 556 U.S. 111 (2009).  The latter means that the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; see also Hill, 474 U.S. at 58-59 (within the context of the defendant's attack on his plea based on his counsel's assistance, the prejudice inquiry is more exacting since it "focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process"). When the defendant does not deny his involvement in the crime he pled guilty to, his "failure to disavow those charges supports a finding that he would have been convicted had the case gone to trial" and, hence, his plea did not cause him prejudice. Cedeno, 455 F. App'x at 245 (citing Premo v. Moore, 131 S. Ct. 733, 745 (2011), for the observation that a defendant's failure to deny involvement in the underlying crime "counsels against a finding of prejudice").

### 2. Petitioner Failed to Establish Prejudice

While Petitioner believes that the disposition of this matter depends on his self-serving conclusions or bold assertion that he suffered "prejudice" as a result of taking Sinins' advice to plead guilty, Petitioner errs. Allegations raised by a pro se litigant are construed liberally and with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989), and do not require "some particular incantation of magic words." Jackson v. United States, No. No. 408-110, 2008 U.S. Dist. LEXIS 115571, at *9 (S.D. Ga. Sept. 18, 2008). Rather, the facts asserted by the defendant in simple English suffice, provided that they actually show a violation of constitutional magnitude. See e.g., Blake v. United States, 841 F.2d 203, 205-06 (7th Cir. 1988) (the fact that the "petition nowhere invoked the magic words" does not mean that the defendant failed to state a viable claim since his allegations "evidence[d] a sufficient concern that he was sentenced . . . on the basis of inaccurate information").

Here, Petitioner failed to make the requisite showing. Although his Petition now alleges that he "informed . . . Sinins that [he] was in fact not guilty of all of the . . . charges against [him,]" this allegation of innocence cannot be harmonized with either his numerous admissions of guilt made during the plea hearing and in his letter seeking withdrawal of his plea, or with his

10

traverse asserting that he "should have been sentenced to" a 96-month term. Simply put, his consistent and numerous admissions of guilt render his single statement of innocence not credible. And, since the mass of evidence against Petitioner was overwhelming, the sum of this evidence and his admissions of guilt indicates, with a substantial degree of likelihood, that he would have been convicted (and sentenced to a much harsher cumulative term) had he elected not to follow Sinins' advice and rejected the plea offer. It follows that neither his plea nor Sinins' advice caused him prejudice. See Cedeno, 455 F. App'x at 245. Since nothing in the Petition shows "a reasonable probability that, but for [Sinins' advice], the result of the proceeding would have been" different or more favorable to Petitioner, Strickland, 466 U.S. at 694, Respondent is correct in its conclusion that Petitioner's attack on Sinins' advice to plead guilty failed to meet the second prong of Strickland. Hence, this line of challenges cannot warrant habeas relief.

Respondent is also correct in its conclusion that Petitioner's peripheral challenges, based on "technicalities," warrant no relief since Petitioner failed to assert any errors in his plea form or the Presentencing Report. See Laufer v. United States, No. 10-0702, 2010 U.S. Dist. LEXIS 130672, at *8 (E.D. Wis. Nov. 29, 2010) (denying Section 2255 relief upon noting that the defendant's "allegation appears little more than the search for a technicality [rather than a statement of material] circumstance sufficient [to warrant] relief"); compare United States v. Tucker, 404 U.S. 443 (1972) (recognizing the right of a criminal defendant to be sentenced on the basis of accurate information rather than "upon misinformation of a constitutional magnitude")). In addition, Petitioner's "technicalities-based" approach cannot invalidate his waiver of collateral-attack rights. See Watts v. United States, 386 F. App'x 245 (3d Cir. 2010) (an error in the underlying record is not a viable basis for a § 2255 action if the defendant's plea

11

agreement waived the right to file a § 2255 motion and his sentence fell within a guidelines range corresponding to a total offense level, since his disagreement with the Government over a construction of U.S. Sentencing Guidelines Manual could not invalidate his waiver).

Finally, Respondent is correct in its observation that Petitioner was neither prejudiced by waiver of indictment nor sentenced to a cumulative term exceeding the one the prosecutor recommended under the plea offer. The underlying record contains Petitioner's averments to this Court that he was clear as to the charges against him, and the cumulative term imposed by this Court was within the range anticipated in the plea deal (which expressly advised Petitioner, just as this Court did during the plea hearing, that Petitioner might be sentenced to a term harsher than the range recommended by the prosecutor). Petitioner's "technicalities-based" challenges cannot warrant habeas relief. See, e.g., Kieffer v. United States, 1993 U.S. App. LEXIS 13451, at *4 (9th Cir. May 27, 1993) (the defendant must meet his initial burden to controvert the matters alleged in his presentencing report by pointing out specific errors) (citing United States v. Roberson, 896 F.2d 388, 391 (9th Cir. 1990)).

    B.    **Aspects Not Addressed in the Answer**

        1.    **Petitioner's Reliance on Cureton Is Misplaced**

            a.    *Claim Asserting Multiple § 924(c) Sentences*

Petitioner's position based on Cureton, fleshed out in his traverse, evinced his confusion as to both law and facts. In Cureton, the defendant, a drug dealer who habitually robbed his customers at gunpoint, hid $9,000 in cash in the freezer of the apartment he and his wife shared with a roommating couple. Concerned about a police investigation of his latest armed robbery, he and his wife decided to flee and directed the female roommate to bring them the cash and their puppy. After the roommate lost the money on the way as a result of struggling to carry the

puppy, the defendant kidnapped her, brutally assaulted her, "held a gun to her to her head" and called her relatives demanding cash for her release. Cureton, 739 F.3d at 1034-36. The jury convicted him of *two* predicate offenses (an attempted extortion and ransom request) and *two* § 924(c)(1)(A)(i) firearm offenses correlated to these two predicate offense, even though both § 924(c) convictions derived from the very same single act of the defendant holding the gun to his roommate's head. See id. at 1040. Since these two § 924(c) convictions also gave rise to two different sentences, the Seventh Circuit vacated one of these convictions and its sentence (while leaving the second § 924(c)(1)(A)(i) conviction and its sentence intact) and explained:

> The offenses of . . . an interstate ransom request and attempted extortion were premised on the exact same conduct -- the telephone calls to [the roommate's] relatives demanding money for her release. [There is no dispute that the defendant] committed the two predicate offenses simultaneously and that there is no distinction in the conduct that gave rise to the two predicate offenses. [Therefore, the two convictions for both predicate offenses were correct. That being said, there is no] distinction in the use of the firearm, as [the defendant] pointed the [very same] gun at [the roommate] a single time.

Id. at 1040; see also id. at 1035 ("Because there [was] only a single use of a single gun, . . . only one § 924(c)(1)[(A)(i)] conviction [could] stand").

Here, the facts are different. Petitioner never had more than one § 924(c)(1)(A)(ii) conviction, and he was sentenced to a single mandatory term on the basis of that single offense. In addition, Respondent is correct in its assertion that the Government could, had it wished to, pursue four additional § 924(c)(1)(A)(ii) convictions without risking to offend the logic of Cureton since Petitioner's indictment asserted five different, non-simultaneous predicate offenses (four robberies and one carjacking), each accompanied by its own, distinct and different, use of a gun. Because Petitioner's Cureton-based claims asserting that he was subjected to multiple convictions and sentences lack any factual predicate, they cannot warrant habeas relief.

13

### b. *Claim Asserting Undue Sentence Enhancement*

Petitioner's Cureton-based position was fully fleshed out in the traverse. Yet, an analogous allegation was hinted at in his Petition. There, Petitioner asserted that: (a) his two concurrently running 96-month sentences (imposed for his predicate offenses, one Hobbs Act conspiracy and one carjacking) were unduly "enhanced" on the basis of his use of a firearm; and (b) such "enhancement" subjected him to a Cureton-like double sentencing in light of his § 924(c) conviction that produced his 84-month term. See this case, ECF No. 1, at 8 (asserting "double counting"). Petitioner errs as to the facts of his conviction and the statutory regime.

The Hobbs Act conspiracy provision, under which Petitioner was sentenced to one of his 96-month terms running concurrently, reads:

> Whoever . . . obstructs . . . or affects commerce . . . by robbery . . . or conspires so to do . . . shall be . . . imprisoned not more than twenty years . . . .

18 U.S.C. § 1951(a).

The provision under which Petitioner was convicted of carjacking and sentenced to his other 96-month concurrently-running term, states:

> Whoever, with the intent to cause . . . serious bodily harm[,] takes a motor vehicle . . . from the person . . . by force . . . or by intimidation, or attempts to do so, shall . . . be . . . imprisoned not more than 15 years . . . .

18 U.S.C. § 2119 (1).

Neither one of these provisions has an element increasing a mandatory minimum term or extending a mandatory maximum term on the basis of the defendant's possession, use or carrying of a firearm. See 18 U.S.C. §§ 1951 and 2119; compare Alleyne v. United States, 133 S. Ct. 2151 (2013) (examining § 924, which contains an element increasing a five year mandatory-minimum term to seven years if the defendant brandishes a firearm); Apprendi v. New Jersey, 530 U.S. 466 (2000) (addressing a state statute containing an element raising the

mandatory maximum sentence if the defendant aimed to intimidate his victim because of the victim's race). Simply put, both Petitioner's 96-month sentences were selected by this Court solely on the basis of the predicate offenses Petitioner pled guilty to and *without* any considerations unrelated to the elements of Sections 1951 and 2119. Petitioner's position is divorced from the facts of his convictions and warrants no habeas relief.

Also, since Petitioner's challenge to his sentence (as selected and imposed by this Court) has no relevance to Petitioner's guilty plea, it had to be raised on direct appeal, not being cognizable in Section 2255 review. See Tollett, 411 U.S. at 267 (when the defendant pled guilty, "he may . . . only attack the voluntary and intelligent character of the guilty plea"); accord United States v. Galindez, 2014 U.S. App. LEXIS 2887, at *5 (Feb. 18, 2014) (an Alleyne-like claim cannot be raised in a § 2255 matter since Alleyne is not retroactively applicable on collateral review); United States v. Swinton, 333 F.3d 481 (3d Cir. 2003) (an Apprendi-like claim cannot be raised in a § 2255 matter since Apprendi is not retroactively applicable on collateral review).

No matter how this Court were to slice it, both Petitioner's Cureton-based and Cureton-like claims warrant no habeas relief and will be dismissed.

### 2. Residual Allegations Warrant No Habeas Relief

Petitioner's remaining claims fare no better. He maintains that Sinins did not conduct a sufficient "pretrial investigation" of his case and "came to see [him only] twice" but, since these claim have no relevance to Petitioner's guilty plea, they cannot be raised in a Section 2255 action. In addition, these claims are substantively meritless. See Echols v. Ricci, No. 09-5548, 2011 U.S. Dist. LEXIS 93833, at *98-102 (D.N.J. Aug. 19, 2011) (citing Rolan v. Vaughn, 445 F.3d 671, 682-83 (3d Cir. 2006), for the observation that counsel is not obligated to "chase after the wind," and habeas relief based on an insufficient investigation may be warranted only if the

defendant shows that his counsel overlooked a specific and reasonably discoverable piece of evidence so favorable to the defendant that lack thereof caused prejudice within the second prong of Strickland) (quoting Strickland, 466 U.S. at 691, for the observation that "counsel has a duty to make [only] reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"), aff'd, 492 F. App'x 301 (3d Cir. July 19, 2012); see also Hall v. Bartkowski, No. 11-4148, 2013 U.S. Dist. LEXIS 47984 (D.N.J. Apr. 3, 2013) (citing Cox v. Ricci, No. 08-2655, 2010 U.S. Dist. LEXIS 115711, at *15-16 (D.N.J. Oct. 29, 2010), for the observation that the defendant cannot establish ineffective assistance of counsel by "assert[ing] . . . a mechanical calculation of alleged meetings and then, self-servingly, declare[ing] the amount of such alleged meetings insufficient"); accord Layne v. Moore, 90 F. App'x 418 (3d Cir. 2004) (affirming dismissal of a claim asserting that counsel was ineffective because he met with the defendant only thrice); Brownlee v. Haley, 306 F.3d 1043 (11th Cir. 2002) (counsel was not ineffective even if he met with the defendant only twice for 10 minutes).

Petitioner's assertion that he, "in fact[,] got sentenced to more time" because Sinins advised him to plead guilty to carjacking (in addition to conspiracy) is factually false. The 96-month sentence based on carjacking did not increase Petitioner's cumulative term an iota, being identical in length and running concurrently to his 96-month conspiracy-based sentence. Petitioner's allegation that Sinins "lied" to him by promising that he would be sentenced to "less" time" had he pled guilty to carjacking defies common sense, while Petitioner's insinuation that the plea offer did not include the carjacking charge, and Sinins "put it in the plea agreements himself" is belied by the underlying records. Accord Benson v. United States, No. 13-0213, 2014 U.S. Dist. LEXIS 2089, at *19 (D.N.J. Jan. 8, 2014) (citing Thornton v. Micrografx, 878 F.

Supp. 931, 938 (N.D. Tex. 1995), for the observation that "The court refuses to leave its common sense at the courthouse step").

By the same token, Petitioner's assertion that he was "deceived" into waiving his direct-appellate and collateral-attack rights is facially untrue, since the record contains this Court's extensive discussion of this very issue during Petitioner's plea hearing. Said discussion ensured that Petitioner fully understood and could not have been "deceived" about any aspect of his waiver. And while Petitioner might have preferred to plea guilty while retaining his direct-appellate or collateral-attack rights, such offer was simply not on the table, and Sinins was neither required to seek nor entitled to demand such concession from the prosecutor. See United States v. Gonzalez, 918 F.2d 1129, 1134 (3d Cir. 1990) ("The prosecutor is under no duty to plea bargain -- if no offer is made, the defendant [cannot demand it and must proceed] to a trial") (internal quotation marks and citation omitted); see also Government of Virgin Islands v. Scotland, 614 F.2d 360 (3d Cir. 1980) (until/unless the defendant accepts the offered plea deal, the Government can withdraw it, and the defendant cannot compel its reinstatement); see also Welch v. United States, 370 F. App'x 739 (7th Cir. 2010) (counsel has no obligation to seek plea negotiations); United States v. Cabaccang, No. 97-0095, 2010 U.S. Dist. LEXIS 75813 (D. Guam, July 28, 2010) (counsel has no obligation to seek a "better" or "sweeter" plea deal).

Petitioner's attack on the performance of his sentencing counsel is also meritless. Contrary to Petitioner's impression, his sentencing counsel, being bound by Petitioner's plea and this Court's ruling declining withdrawal of that plea, was barred from making another withdrawal motion under the law of the case doctrine. See Anderson v. Comm'r, 698 F.3d 160, 166-67 (3d Cir. 2012) (under the law of the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case, unless a later trial produces substantially different

17

evidence, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice) (citing Arizona v. California, 460 U.S. 605, 618 (1983)); accord Mars v. United States, No. 08-0040, 2013 U.S. Dist. LEXIS 76862 (M.D. Ga. Apr. 25, 2013) (denial of the defendant's application to withdraw his guilty plea bars the defendant from making the same application under the law of the case doctrine).  Nor could the sentencing counsel file an appeal on Petitioner's behalf since: (a) his appointment was limited to Petitioner's proceedings in this District; and, in any event, (b) he was conclusively bound by Petitioner's waiver of direct-appellate rights.  The sentencing counsel neither did nor even could violate Petitioner's rights by his alleged actions.

### C. Certificate of Appealability

The Petition does not state a claim for relief because Petitioner has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Because this Court does not believe that reasonable jurists would find this "assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), this Court declines to issue a certificate of appealability.

### III. CONCLUSION

Petitioner's request for relief pursuant to 28 U.S.C. § 2255 will be denied.  No certificate of appealability will issue. An appropriate Order follows.

Date: April 11, 2014

/s/ William H. Walls
United States Senior District Judge